UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LINDA S. CRAFT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:05-CV-00007 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff, Linda S. Craft ("Plaintiff"), appeals the denial of her application for Social Security Disability Income Benefits ("DIB"). She challenges the Administrative Law Judge's ("ALJ") finding that she was not disabled because she remained able to perform her past relevant work.

Plaintiff applied for DIB on July 29, 2002, alleging an onset date of September 15, 2001. Her application was denied initially and on reconsideration (Tr. 30C, 30G). An ALJ held a hearing at which Plaintiff, who was represented by an attorney, and a vocational expert (VE) testified (Tr. 187-210). The ALJ considered the case de novo and on September 22, 2004 found that Plaintiff was not disabled because she remained able to perform her past relevant work (Tr. 10-18). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the Commissioner's final decision under authority of 42 U.S.C. § 405(g).

I. **BACKGROUND**

Plaintiff was fifty-seven years old at the time of the agency's final decision (Tr. 10, 42). She completed high school with a GED and has worked as a cashier, machinist, and bookkeeper (Tr. 60-64). Plaintiff claimed that she could no longer work due to head pressure and pain and back pain (Tr. 42, 74).

Plaintiff reported that she cooked, did the laundry, cleaned the house, saw her mother three times each week, made the bed, and went grocery shopping (Tr. 55-56). Plaintiff testified that she lived with a friend and visited her family (Tr. 198, 200-01).

A. **Medical Evidence**

Dr. Ralph Streeter examined plaintiff on September 10, 2002 (Tr. 102). Plaintiff got on and off the examining table without difficulty, she could walk on her heels and toes, and she had a normal gait and station (Tr. 103). Her visual acuity with glasses was 20/50 on the right and 20/70 on the left (Tr. 103). Extraocular movements were intact, pupils were equal and reactive to light, and visual fields were normal by confrontation (Tr. 103). Plaintiff could bend over and get up without difficulty (Tr. 103), and bilateral straight leg raising was normal (Tr. 104). Motion studies of the extremities and entire spine were normal, except left cervical rotation, which was only minimally reduced (Tr. 105). There were no neurological deficits and no atrophy (Tr. 104). Dr. Streeter recommended a psychological evaluation (Tr. 105).

Dr. David Jarmon performed a psychological evaluation of plaintiff on September 11, 2002, at the request of the state agency (Tr. 106). Plaintiff told Dr. Jarmon that she lost her last job due to downsizing, and that she believed she could have continued to do that job after September 2001 (Tr. 106). Dr. Jarmon concluded that based on the results of his evaluation,

plaintiff would not be precluded from performing gainful employment (Tr. 107). An October 22, 2002 MRI of the brain was normal (Tr. 177).

**B.      Vocational Expert Evidence**

Gail Corn, a vocational expert ("VE"), appeared and testified at the hearing. The ALJ asked the VE a hypothetical question if an individual like plaintiff, with her education, age, and previous work experience, who could do light work that allowed for alternating between sitting and standing for at least one or two minutes per hour, did not require more than occasional squatting, or climbing ramps and stairs, and did not require kneeling, crawling, or climbing ladders, ropes, or scaffolds, could perform any of her past relevant jobs (Tr. 208). The VE replied that such a person could perform her past relevant work as a bookkeeper, cashier, and machine operator (Tr. 208-09). The VE testified that plaintiff's past job as a bookkeeper was semiskilled and her job as a cashier was unskilled (Tr. 209).

**C.      The ALJ's Decision**

The findings of the ALJ were as follows:

1.      The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set for the in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.      The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.      The claimant's obesity, hypertension, occipital neuralgia, osteoarthritis, depression, cognitive disorder, left hearing loss and osteoporosis are considered "sever" based on the requirements in the Regulations 20 CFR § 404.1520©.

3

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: light exertional level work with the following restrictions:

7. The claimant's past relevant work as cashier, machinist, bookkeeper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable obesity, hypertension, occipital neuralgia, osteoarthritis, depression, cognitive disorder, left hearing loss and osteoporosis do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

## II. STANDARD OF REVIEW

This court's review of the Commissioner's decision is a limited one. Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. *Griffth v. Callahan*, 138 F.3d 1150, 1152 (7th Cir. 1998). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). In making a substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the

Commissioner. *Griffth*, 138 F.3d at 1152; *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir. 1997). That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Griffth*, 138 F.3d at 1152. The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Id.*; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

### III. DISCUSSION

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Under section 423(c)(1)(B)(1), it is well-established that to receive benefits, a disability must have begun or had its inception during the period of insured status. *Bastian v. Schwiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert. denied*, 444 U.S. 952 (1979). The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 659 (7th Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276; 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not

5

prior to or subsequent to the dates in question." *Jeralds*, 445 F.2d at 39.  Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind.1982).  Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured.  *Jeralds*, 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976).

The claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled.  As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy.  *Clifford*, 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled.  *Clifford*, 227 F.3d at 868.  A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Id.*  The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

The Plaintiff disagrees with the ALJ's finding that she was not disabled.  In particular, the

6

Plaintiff argues that the ALJ in his findings only gives a partial residual functional capacity. Plaintiff further asserts that because the ALJ never provided an appropriate residual functional capacity, he did not have anything to compare to Plaintiff's past relevant work to determine if she could do that work. Finally, Plaintiff asserts that the ALJ gave no rationale nor any scope to his credibility findings.

**A.    The ALJ's Partial Residual Functional Capacity Finding**

Plaintiff claims that the ALJ gave a partial residual functional capacity. Plaintiff asserts that the ALJ found that she could do light work with restrictions, but hat he never included any limitations in his residual functional capacity assessment. In particular, Plaintiff claims in his "Findings" portion of the Decision, the ALJ stated that Plaintiff could do light work with "the following restrictions:," but never listed any limitations. The Defendant asserts that this was an inadvertent omission because a close reading of the ALJ's entire decision reveals that the ALJ did, in fact, set out the restrictions on Plaintiff's ability to do light work.

After review of the ALJ's entire decision, the Court finds that the ALJ made an inadvertent omission. Significantly, the ALJ stated in Part II of his Decision that "[a]fter a consideration of all of the evidence of record, I find that the claimant is capable of light exertional level with the following restrictions: ability to alternate into a sitting or standing position at his or her option for periods of one to two minutes per hour; no kneeling, crawling, or climbing of ropes, ladders, or scaffolds; no walking on uneven surfaces; no work at unprotected heights, around dangerous machinery, or operating a motor vehicle, or being around open flames or large bodies of water; only simple and repetitive work, and no more than superficial interaction with the general public, coworkers, and supervisors. There is no pathology in the

claimant's impairments precluding work at this level." (Tr. 14-15).  Moreover, the ALJ subsequently stated that he found that Plaintiff had the residual functional capacity to perform light exertional level work "with the aforementioned additional exertional and nonexertional limitations." (Tr. 17).  The ALJ set forth Plaintiff's residual functional capacity for light work and specifically listed all of the restrictions that Plaintiff was subject.

**B.    The ALJ's Comparison of Plaintiff's Past Relevant Work**

The Plaintiff contends that because the ALJ never provided an appropriate residual functional capacity, he did not have anything to compare to Plaintiff's past relevant work to determine if she could do that work.

Again, the ALJ provided a detailed residual functional capacity of plaintiff's ability to work.  The ALJ reasonably determined that because Plaintiff had the ability to do light work with various restrictions, and because Plaintiff's previous jobs could be performed with the ability to do light work with various limitations, Plaintiff was not disabled because she is able to perform her past relevant work.  The Court finds that the ALJ properly compared Plaintiff's residual functional capacity with the requirements of her past relevant work.

**C.    The ALJ's Rationale and Scope of His Credibility Findings**

Plaintiff argues that the ALJ gave no rationale nor any scope of his credibility findings. Plaintiff asserts that the ALJ gave no indication as to the effect of her head pain on either attendance or on ability to focus on the task at hand.

The ALJ found that Plaintiff's allegations of her symptoms were not fully credible on several grounds, and the ALJ properly supported his conclusion with evidence from the record. The ALJ considered Plaintiff's daily activities, her employment history, and her admissions

8

regarding her daily activities, and he reasonably determined that they supported his decision that Plaintiff could do a limited range of light work.  Moreover, after the ALJ determined Plaintiff's residual functional capacity, he then compared that ability to work with the physical and mental demands of Plaintiff's past relevant work, concluding that the Plaintiff was not disabled because she could perform her past relevant work as a cashier, machinist, and bookkeeper.

## IV.   CONCLUSION

Based on the foregoing, the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date: February 8, 2006

     s/Allen Sharp
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**